SHILL ROLLING CHAIR COMPANY ET AL., PROSECUTORS,
v. ATLANTIC CITY.

Argued February 18, 1915—Decided June 5, 1915.

1. Under the conditions found existent in this case, license fee of $15 per single rolling chair per annum and $20 per double chair, to be operated on Atlantic City boardwalk, and $100 for each renting stand for such chairs per year—*Held*, not unreasonable or confiscatory.

2. The imposition of a fee for the stand as well as for each chair is authorized both by the language of the Charter act of Atlantic City (*Pamph. L.* 1902, *p.* 284) and by the licensing act (*Pamph. L.* 1912, *p.* 209).

3. Such fees are not a property tax.

4. The ordinance prescribing said license fees is not in illegal restraint of trade.

5. An ordinance prescribing alternative penalties, one of which is not authorized by the statute on which it is based, will not be set aside *in toto* in advance of imposition of the unlawful penalty, the latter being separable.

On *certiorari* to convictions of violating ordinance of Atlantic City.

Before Justices SWAYZE, PARKER and KALISCH.

For the prosecutors, *Bourgeois & Coulomb, Garrison & Voorhees,* and *Lee F. Washington.*

For the defendants, *Theodore W. Schimpf.*

The opinion of the court was delivered by

PARKER, J. These writs, eleven in number, bring up the convictions of various proprietors of rolling chairs and stands,

where the same are rented in Atlantic City, for failing to pay the license fees prescribed by an ordinance of that city passed May 14th, 1914, and approved May 20th, entitled "An ordinance governing, regulating, and fixing fees of mercantile licenses in Atlantic City, New Jersey, and regulating the businesses licensed." The Charter act of the city will be found in *Pamph. L.* 1902, *p.* 284, although the city later adopted commission government under the so-called "Walsh act" of 1911. *Pamph. L., p.* 462. The ordinance in question is based either on subsection XXVII. of section 14 of the 1902 act, which will be found copied in *Atlantic City* v. *Hemsley,* 76 *N. J. L.* 354 (at *p.* 355), or on the License act *(Pamph. L.* 1905, *p.* 360), as amended in 1908, *p.* 588, and again in 1912, *p.* 209, and which purports to repeal all inconsistent legislation. It will be observed on a reading of these acts that the city is empowered, among other things, to impose license fees for vehicles used for the transportation of passengers; the owners and drivers of vehicles; the places of business in which or at which the different kinds of businesses are to be carried on; and that the fees for such licenses may be imposed for revenue. The powers conferred are very broad and sweeping, and advantage has been taken of them so fully that no doubt a very large proportion of the municipal revenue is derived from license fees; for the ordinance contains an alphabetical list of businesses, several hundred in number, beginning with amusements and auctioneers, and ending with wagons, wall paper, and wood yards. Some of the annual fees run as high as $250, many are $100. As to rolling chairs, pushed by an attendant, and which are the only passenger vehicles on the boardwalk, the fee was fixed at $15 for each single chair, $20 for each double chair, and $100 for each stand where the chairs are kept for hire. Anyone who has been to Atlantic City knows that the number of these chairs is very large, that the stands are numerous, and it is in evidence that the stand privileges rent for high prices, in the hundreds and often in the thousands per annum. Notwithstanding the high cost of the chairs themselves and of doing business, and notwithstanding an ordinance limiting the fees to

one dollar per hour, competition drove the price down to fifty cents for a double chair, then to thirty cents at some stands.

With this preface we pass to the points made by prosecutors.

The first two are that this court has power to declare the fees illegal if they are unreasonably high, and that the fees in question are unreasonable and confiscatory. Assuming the first proposition, we do not assent to the second. It may be true, and doubtless is true, that of late a number of the proprietors have made insignificant profits and even have lost money. But this does not demonstrate that the license fees are unreasonable; for the situation may be, and probably is, due rather to the falling prices, rising rentals of stands, and multiplication of chairs until they seriously interfered with pedestrians on the boardwalk. It is quite as fair to conclude that there are too many chairs for the business, and that when the number is adjusted to the actual demand, the fee will be found reasonably proportioned to the nominal returns at a fair price for service.

The next attack is upon the imposition of license fees both on each chair and on the places where they are rented out. But this is expressly authorized both by the charter and by the License act, which as we have seen permit a fee for every vehicle and also for a place of business. It is unnecessary for this case to decide which act controls. The chairs can be obtained only at the stands; so these are manifestly the "places of business." Similarly the ordinance prescribes one fee for a laundry, and another for each wagon; for a grocery store, and for each delivery wagon, and so on.

The next point is that these fees charged for each chair constitute a tax not on the privilege of doing business but on the amount of business done, and therefore are a property tax (and as claimed) obnoxious to the constitutional requirement for assessment by general laws according to uniform rules. The case of *Johnson* v. *Asbury Park*, 58 *N. J. L.* 604, is cited in connection with this point. An examination of that case will show that the license fee complained of was exacted from every delivery wagon, &c., used in the enumerated occupations; and as the ordinance was then upheld, the case is di-

rect authority in support of the method of licensing now complained of.

The next proposition, that the ordinance is in illegal restraint of trade because unreasonable, is disposed of by our finding that it is not unreasonable.

Again it is urged that the ordinance could not lawfully provide a penalty by fine, or imprisonment in default of payment thereof. Such a provision is expressly authorized by section 16 of the Charter act, which says that in all cases where the council have power to pass ordinances, they may prescribe penalties for violation by a fine not exceeding $200, and imprisonment not exceeding ninety days in default of the payment of such fine. The License act authorizes simply fine or imprisonment. Neither mentions the imposition of costs; and the provisions of the ordinance, both as to imprisonment in default of payment of fine, and as to requiring payment of costs in case of conviction, are challenged. Section 9 of the ordinance does provide a fine of $10 upon conviction and in default of payment, imprisonment until the fine and costs shall be paid. But an examination of the records of conviction in the printed case shows that neither costs nor imprisonment were included or mentioned in the sentence; and consequently no legal injury has been sustained by prosecutors or any of them in this regard. The provisions for alternative imprisonment and for the imposition of costs are separable, and if invalid, their invalidity will not avoid the entire ordinance. *Doran* v. *Camden,* 64 *N. J. L.* 666; *Rosencrans* v. *Eatontown,* 80 *N. J. L.* 227, 234, 235.

The last point is that under the Walsh act amendment of 1912, *p.* 643, the ordinance must have been recorded before it acquired vitality, and that the return does not show that it was ever recorded. This point, however, is not raised in the reasons filed, and is therefore not before us.

The convictions will be affirmed, with costs.